IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 18-cv-00789-RBJ-SKC

WYATT T. HANDY, JR.,
ASHLEE M. HANDY,

    Plaintiffs,

v.

TERA L. FISHER, AND
BRANDON H. JOHNSON

    Defendants.

_____

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT [ECF. #31]**
_____

This Report and Recommendation ("Recommendation") addresses Defendants Tera L. Fisher ("Fisher") and Brandon H. Johnson's ("Johnson") (collectively, the "Officers") Motion to Dismiss Amended Complaint (the "Motion") [ECF. #31]. The Court has reviewed the Motion and related briefing, and the applicable law. Now being fully informed, the Court **RECOMMENDS** the Motion be **GRANTED in part and DENIED in part**.

    **I.    SUMMARY FOR PRO SE PARTY**

The Court is recommending that District Judge Jackson partially grant Defendants' motion to dismiss because the Amended Complaint fails to allege sufficient facts to plausibly establish the Fourteenth Amendment and official capacity claims based on the

1

applicable legal standards. The Court recommends partially denying Defendants' motion as it relates to the Fourth Amendment claim because this Court believes the Amended Complaint plausibly alleges sufficient facts to maintain the Fourth Amendment (unreasonable seizure) claim. Plaintiffs and Defendants will have fourteen days after service of this Recommendation to file specific written objections to this Recommendation with Judge Jackson for his review. Judge Jackson may either adopt this Recommendation, or reject this Recommendation, and issue an order based on his own findings and conclusions. Should Judge Jackson adopt this Recommendation, then: (a) Plaintiffs' Fourteenth and official capacity claims will be dismissed and no further actions may be brought against these Defendants based on the events alleged in the Amended Complaint for a violation of the Fourteenth Amendment; and (b) the Fourth Amendment claims would continue in litigation.

## II.     PROCEDURAL HISTORY

Plaintiffs Wyatt T. Handy Jr. ("Mr. Handy"), and Ashlee M. Handy ("Mrs. Handy") (collectively, the "Handys") brought this action under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 seeking money damages for alleged Fourth and Fourteenth Amendment violations by the Officers. [ECF. #1.] Magistrate Judge Gallagher ordered the Handys to file an amended complaint after noting their failure to assert a cognizable claim against the Board of County Commissioners of Jefferson County, who was a named defendant at the time. [ECF. #7.] The Handys filed their Amended Complaint ("Complaint") on June 27, 2018. [ECF. #9.]

## III. FACTUAL BACKGROUND[1]

On April 14, 2016, Mrs. Handy was driving a vehicle with Mr. Handy, an African-American, riding in the front passenger's seat. An unnamed female passenger rode in the backseat. [ECF. #9 at ¶9.] At approximately 12:43 A.M., the Handys pulled into the parking lot of a 24-hour gas station in Conifer, Colorado, to re-program their GPS unit. [*Id.* at ¶¶10, 15, 52.] The Handys passed Fisher, who was sitting in her patrol car at the gas station's entrance. [*Id.* at ¶12.] Mr. Handy and Fisher made eye contact as the Handys passed in their vehicle. [*Id.* at ¶13.]

Mrs. Handy parked the car and they "immediately began reprogramming" the GPS. [*Id.* at ¶14.] After being parked for "less than a minute," Fisher pulled her vehicle behind the Handys, blocking their exit, and activated her emergency lights. [*Id.* at ¶¶15, 16.] "Within seconds," "several" other officers, including Johnson, arrived. [*Id.* at ¶¶17,18.]

With weapons drawn, Fisher and Johnson approached the driver and passenger side of the Handys' vehicle, respectively. [*Id.* at ¶¶19, 20.] Fisher told the Handys the reason for the stop was a "suspicious vehicle," and asked Mrs. Handy for her driver's license, and insurance and registration. [*Id.* at ¶¶22, 57, 59.] "[I]n a hostile manner," Fisher also "immediately began demanding" Mr. Handy produce his identification as well. [*Id.* at ¶25.] Mrs. Handy complied and told Fisher they had parked to reprogram their GPS. [*Id.* at ¶24.] Mr. Handy, on the other hand, initially refused to produce his identification and asked the Officers to move their vehicles so they could leave. [*Id.* at ¶26.] The Officers "made it clear" that the Handys were not free to go, and "inferred" that Mr. Handy would

---

[1] The following allegations are viewed in the light most favorable to Plaintiffs. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010).

be arrested if he failed to provide his identification. [*Id.* at ¶27.] Mr. Handy eventually complied. [*Id.* at ¶28.] The unnamed female passenger was not asked to provide identification. [*Id.* at ¶31.] The Officers did not release the Handys until after they confirmed that neither of them had any outstanding warrants. [*Id.* at ¶30.]

None of the Officers' actions were done pursuant to any search, or search and seizure, warrant. [*Id.* at ¶ 37.] In their Complaint, the Handys allege two § 1983 claims. One claim is based on an alleged unlawful seizure in violation of the Fourth Amendment. The second claim is based on an alleged equal protection (racial profiling) violation under the Fourteenth Amendment.

## IV.  STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id*. This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

The Court acknowledges that the Handys are not attorneys. Consequently, their pleadings and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by a lawyer. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "[I]f the court can reasonably read the pleadings to state a claim on which the plaintiff[s] could prevail, it should do so despite the [The Handys'] failure to cite proper authority, [their] confusion of legal theories, [their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements." *Id*.

However, the Court cannot act as a *pro se* litigant's advocate. *Id*. It is the

5

responsibility of the *pro se* plaintiffs to provide a simple and concise statement of their claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998). The Court may not "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may a plaintiff defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been pleaded. *Associated Gen. Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In the end of the day, *pro se* plaintiffs must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## V. DISCUSSION

The Handys assert their claims against the Officers in their individual and official capacities. [*See generally* ECF. #9.] The Officers claim dismissal is warranted on the individual capacity claims because they are entitled to qualified immunity. They claim dismissal is warranted on the official capacity claims because the Complaint alleges insufficient facts to plausibly establish claims or liability in their official capacity.

### A. Individual Capacity Claims

The Officers argue they are entitled to qualified immunity because the Complaint fails to allege a deprivation of a constitutional right. [ECF. #31 at pp. 5-11.] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).

Raising qualified immunity at the motion to dismiss stage "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). At this stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis omitted). When a defendant raises qualified immunity as a defense, a complaint "must properly allege a deprivation of a constitutional right and must further show that the constitutional right was clearly established at the time of the violation." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).

If the Handys fail to carry either part of the two-part burden, the Officers are entitled to qualified immunity. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The Court is not required to address these inquires in any specific order. *Pearson*, 555 U.S. at 236-37. Here, the Officers do not argue the clearly established prong, but rather, they solely argue the failure to allege a deprivation of a constitutional right.

**1. Fourth Amendment Unreasonable Seizure Claims**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." Whether a seizure is reasonable under the Fourth Amendment depends on the type of encounter alleged. *See, e.g., United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996). "The Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000).

Consensual encounters are not seizures under the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing. *Id.* Arrests are on the opposite extreme. They are "characterized by highly intrusive or lengthy search or detention."

7

*United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir. 1984), *cert. denied,* 467 U.S. 1255 (1984). An officer must have "probable cause to believe that a person committed a crime" for an arrest to be reasonable. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). Investigative stops (or *Terry stops*) fall in the middle. *See Terry v. Ohio*, 392 U.S. 1, 26-27 (1968). An investigative stop occurs when an officer stops and briefly detains a person for investigative purposes. *Oliver*, 209 F.3d at 1186. These stops are constitutional if the officer has a reasonable suspicion supported by articulable facts that the detainees are involved in criminal activity, even if the officer lacks the probable cause necessary for an arrest. *Id.*

Here, the Complaint specifically alleges a "*Terry* stop."[2] [ECF. #9 at ¶¶4-5.] Therefore, the Court must determine whether the Complaint plausibly alleges or suggests that the investigative stop lacked the requisite "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392, U.S. at 30).

For an officer to have reasonable suspicion to seize an individual, the officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Oliver*, 209 F.3d at 1186. In evaluating whether the Officers had reasonable suspicion to detain the Handys, the Court must consider "the totality of the circumstances – the whole picture." *Sokolow*, 490 U.S. at 6 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

---

[2] In their response, the Handys seem to argue that the encounter was an arrest. [ECF. #40 at pp. 6-9.] However, the Handys Complaint plainly alleges the encounter was an investigative stop. [ECF. #9 at ¶¶ 4-5.]

The Court finds that the totality of the circumstances averred in the Complaint plausibly alleges a lack of reasonable suspicion for the Officers' investigative stop. The Complaint alleges simply that the Handys were driving to visit a friend in Conifer when they pulled into the parking lot of a 24-hour gas station to reprogram their navigation system. Almost immediately after parking their vehicle, Fisher pulled behind them, Johnson responded to the scene, and the investigative stop began. The Complaint does not allege any facts suggesting suspicious activity on the Handys' part leading to the investigative stop. It is the absence of allegations of suspicious activity by the Handys that makes their unreasonable seizure claim plausible, at least at this motion-to-dismiss stage. *See Chen v. District of Columbia*, 256 F.R.D. 267, 270-71 (D.D.C. 2009) (issues of whether police officer violated Fourth Amendment rights of suspect mistakenly believed to have failed to pay bill at hotel, and whether officer was entitled to qualified immunity in suspect's civil rights action under § 1983, could not be resolved at motion to dismiss stage because of factual dispute as to whether officer effected a *Terry* stop and had sufficient justification for effecting that stop).

The Officers point to the Complaint's allegation that Fisher stated her reason for the stop was a "suspicious vehicle." They argue that this allegation establishes the existence of reasonable suspicion. [ECF. #31 at p.8.] But the Complaint alleges no facts that support Fisher's statement regarding a "suspicious vehicle." Instead, viewing the Complaint in the light most favorable to the Handys, as this Court must, the Complaint alleges copacetic behavior by the Handys leading to the Officers' investigative stop. The Officers baldly assert that Fisher's basis for her reasonable suspicion "is supported by the

9

other allegations in the Complaint," but they fail to direct the Court to any specific allegations. [ECF. #31 at p.8.]

The Court finds the Complaint does not so much as hint at suspicious conduct by the Handys to warrant reasonable suspicion. When construing the Complaint's allegations in the light most favorable to the Handy's, Fisher's alleged reason for the stop holds no weight at this stage, particularly absent other allegations in the Complaint suggesting the vehicle was indeed suspicious. *See Casanova*, 595 F.3d at 1124-25.

The problem for the Officers here is like that faced by the officer in *Chen*, as explained by the District of Columbia in that case, as follows:

> The problem with [the officer's] attack on [plaintiff's] Section 1983 claim is that it asks the Court to go behind [plaintiff's] complaint, decline to draw any inferences in [plaintiff's] favor, and accept [the officer's] version of events. On a motion to dismiss for failure to state a claim, however, the Court must assume the truth of [plaintiff's] allegations and grant her the benefit of all reasonable inferences. Applying that standard, the Court cannot conclude that [plainittf] has failed to adequately allege that she was subjected to either an unjustified arrest or an unjustified *Terry* stop. The factual record developed through discovery will make clear precisely what sort of seizure [plaintiff] experienced, and whether [the officer] had sufficient justification for executing that seizure.

256 F.R.D. at 271.

For these reasons, the Court finds that the Handys have plausibly alleged a claim for relief under the Fourth Amendment against Fisher and Johnson. Therefore, the Officers are not entitled to qualified immunity. Accordingly, the Court RECOMMENDS denying the Officer's motion to dismiss the Handys' Fourth Amendment claim.

### 2. Fourteenth Amendment Equal Protection Claims

To proceed on an equal protection claim, a plaintiff must first show "that he was treated differently from others who are similarly situated to him . . . ." *Marshall v. Columbia*

*Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). "Individuals are 'similarly situated' only if they are alike 'in all relevant respects.'" *Requena*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008)).

Here, the Complaint lacks any allegation that the Officers treated Mrs. Handy differently from others who are similarly situated to her. In fact, the Complaint does not allege Mrs. Handy's race at all.[3] [*See generally* ECF. #9.] Therefore, Mrs. Handy has not plausibly alleged a Fourteenth Amendment equal protection claim.

Turning to Mr. Handy's claim, the Complaint alleges that Mr. Handy is an African American male who was riding in the passenger's seat of a vehicle while passing through a "predominately white city." [ECF. #9 at ¶¶47, 49-51, 56-59.] Mr. Handy asserts that this creates a reasonable inference that the Officers treated him differently based on his race. [*Id.*] As further support, Mr. Handy draws the Court's attention to allegations in the Complaint that Fisher saw and made eye contact with him, and thereafter, Fisher "wanted to know what a Black man was doing in Conifer, a predominately White community." [*Id.* at ¶33.] He further points to the conclusory allegation in the Complaint that Fisher's use of "suspicious vehicle" really meant "driving while Black." [*Id.*]

Despite the demographics alleged in the Complaint, there are no allegations in the Complaint of others who were similarly situated to Mr. Handy, but treated more favorably than him, by the Officers. While the Complaint alleges that, unlike Mr. Handy, the unidentified female passenger in the back seat was not asked to provide her identification,

---

[3] It appears the Handys argue that she was discriminated against based on her race. But the Complaint does not allege her race. The Response, however, asserts that Mrs. Handy is Caucasian. [ECF. #40 at p.10.]

the Complaint does not allege this unidentified-passenger's race.[4] Moreover, to the extent the Handys were similarly situated to each other (both sitting in the front of the vehicle; both asked to provide identification), the Complaint alleges they were treated the same.

Nor do the allegations in the Complaint alleging Conifer's and Jefferson County's respective predominately-Caucasian demographics suffice. [ECF. #9 at ¶¶49, 50.] The fact that the locale in which this stop occurred may have a significantly low African American population, without more, does not satisfy a plaintiff's burden to plausibly set forth a claim that he was treated less favorably than similarly-situated Caucasian individuals under the circumstances alleged in the Complaint. *United States v. Coleman*, 482 Fed. App'x 419, 420-21, 2012 WL 1764224, *1 (10th Cir. 2012) (generalized statistics regarding aggregated law enforcement data for law enforcement contacts for all officers in an area is not helpful in proving an Equal Protection claim because plaintiff "must provide that the decisionmakers in his case acted with discriminatory purpose").

A plaintiff's burden does not end at the threshold showing of disparate treatment from those similarly situated to him. *Marshall*, 345 F.3d at 1179. Instead, a claim of racially selective law enforcement requires the plaintiff to "demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). "The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision." *Id.; see also Blackwell v. Strain*, 496 Fed. App'x 836, 839-844, 2012 WL 3939917 (10th Cir. 2012) (reviewing and rejecting claim by African American truck driver

---

[4] In their Response, the Handys assert that the passenger is Caucasian. [ECF. #40 at p.10.]

12

stopped at port of entry in New Mexico that the stop violated his Fourteenth Amendment equal protection rights).

Here, the Complaint falls woefully short in alleging the requisite facts to plausibly suggest a viable Fourteenth Amendment claim. For these reasons, the Complaint fails to state an Equal Protection claim, and this claim should be dismissed against all Defendants.

## B.    Plaintiffs' Official Capacity Claims

The Officers argue that the Handys' official capacity claims should be dismissed because the Complaint does not "demonstrate the existence of an injury caused by a municipal policy or custom." [ECF. #31 at pp.11-12.] The Court agrees.

As the Officers point out, it is axiomatic that "[a] municipality is not liable solely because its employees caused injury." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). "Rather, a plaintiff asserting a § 1983 claim must show '(1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the injury alleged.'" *Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015) (citing *Graves*, 450 F.3d at 121). Here, the Handys' official capacity claims fail because the Complaint makes no allegation whatsoever as to the existence of a municipal policy or custom – let alone a causal link between a municipal policy and the alleged constitutional violations.[5] Thus, this claim should be dismissed.

## VI.    RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants Fisher and

---

[5] The Court afforded the Handys a prior opportunity to amend their complaint to assert facts in support of these elements of their official capacity claims. [ECF. #7.] However, the Handys still did not allege any such facts with their amendment.

Johnson's Motion to Dismiss [ECF. #31] be **GRANTED in part**, to the extent it seeks dismissal of Plaintiffs' Fourteenth Amendment Equal Protection claims against Defendants in their individual and official capacities, and the Fourth Amendment official capacity claims against Defendants, **and DENIED in part**, to the extent it seeks dismissal of the Plaintiff's Fourth Amendment individual capacity claims against Defendants.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, and waives appellate review of both factual and legal questions. *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985); *Makin v. Colorado Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

DATED: March 4, 2019

BY THE COURT:

_____
S. Kato Crews
United States Magistrate Judge