IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 18-cv-00789-RBJ-SKC

WYATT T. HANDY, JR.,
ASHLEE M. HANDY,

    Plaintiffs,

v.

TERA L. FISHER, AND
BRANDON H. JOHNSON

    Defendants.

_____

**ORDER RE: PLAINTIFFS' SECOND MOTION TO COMPEL [#76]**
_____

This order address *pro se* Plaintiffs Wyatt and Ashlee Handy's Second Motion to Compel Discovery ("Motion") [#76].[1] The Motion was referred to this Court. The Court has considered the Motion, Defendants' response [#79], and Plaintiffs' reply [#82].[2] No hearing is necessary to resolve the Motion.

### A. FACTS PERTINENT TO THE MOTION

The Court summarizes the facts using Judge Jackson's description from his prior order [#47]: Plaintiffs were driving along Highway 285 to visit a friend in Conifer, Colorado

---

[1] The Court uses "[#__]" to refer to applicable documents from the CM/ECF docket.

[2] Because Plaintiffs are unrepresented, the Court has construed their pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

in the early morning of April 14, 2016 when the alleged incident occurred. Three people were in the vehicle: Mrs. Handy, who is white, was driving; Mr. Handy, who is black, was the front seat passenger; and an unidentified white female passenger sat in the backseat behind Mrs. Handy. At approximately 12:43 a.m. Plaintiffs stopped in the parking lot of the 24-hour Kum and Go convenience store in Conifer to reprogram their GPS navigational unit. As Plaintiffs pulled into the Kum and Go located off Highway 285, they noticed Deputy Fisher's ("Fisher") patrol vehicle parked in the convenience store's parking lot. Mr. Handy alleges that he made eye contact with Fisher as Plaintiffs' vehicle pulled into the Kum and Go parking lot.

Within one minute of parking, Plaintiffs allege that Fisher repositioned her patrol car behind Plaintiffs' vehicle and activated her emergency lights. Because Plaintiffs' car faced the Kum and Go building, Plaintiffs were boxed in and unable to move their car. Apparently, Fisher radioed for backup because within "seconds," several additional officers arrived. Deputy Johnson ("Johnson") was one of those officers. With backup in place and their weapons drawn, Fisher approached the driver's side of the vehicle and Johnson approached the passenger's side. Fisher asked Mrs. Handy for her license, insurance, and registration. Mrs. Handy complied with the request, and then she explained that she pulled over to reprogram her GPS. Fisher then asked Mr. Handy for his identification "in a hostile manner." Mr. Handy initially refused to produce identification, but he eventually complied after Defendants made clear that he would be arrested if he did not produce identification. Defendants did not request identification from the backseat

2

passenger. Defendants released Plaintiffs after verifying there were no outstanding warrants pending against them.

Plaintiffs brought this action alleging two 42 U.S.C. § 1983 claims against Defendants. First, Plaintiffs alleged an unlawful seizure in violation of the Fourth Amendment. Second, they asserted that Defendants racially profiled Mr. Handy in violation of the Equal Protection Clause of the Fourteenth Amendment. The Court dismissed Plaintiffs' Equal Protection Clause claim for failure to state a claim upon which relief can be granted and dismissed all official capacity claims. [#47.] Only Plaintiffs' claim for unlawful seizure in violation of the Fourth Amendment remains against the Defendants in their individual capacities.

## B.  ANALYSIS

The written discovery requests at issue include: Interrogatory Nos. 2, 3, 4, 5, and 14, to Fisher; and Requests for Production of Documents 15, 16, and 23, to Fisher and Johnson. They are addressed, in turn, below.

**1.      Legal Standards**

The scope of discovery in federal court is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and <u>proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit</u>. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Rule 26 permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, while the proportional

needs of the case serve as guardrails for further reasonably tailoring the scope of discovery. *Id.* The Court may limit the scope of discovery to protect a party from undue burden or expense. Fed. R. Civ. P. 26(c)(1).

Rule 37 of the Federal Rules of Civil Procedure provides that "[a] party seeking discovery may move for an order compelling . . . production" if the other party fails to produce requested information. Fed. R. Civ. P. 37(a)(3)(B). The moving party bears the burden of proof. *EchoStar Commc'ns. Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998). The moving party must prove the opposing party's responses are incomplete. *Daiflon Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976); *Equal Rights Ctr. v. Post Props.*, 246 F.R.D. 29, 32 (D.D.C. 2007). Additionally, when the relevance of a discovery request is not apparent on the face of the request, the proponent of that discovery bears the burden of making an initial showing of relevance. *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

**2.  Interrogatory Nos. 2 and 3**

These interrogatories ask Fisher to:

- No. 2: Please explain where and how Plaintiffs' car was positioned when it was parked.

- No. 3: Please explain where and how your car was positioned when you pulled up to stop Plaintiffs' car.

Fisher raised objections to these interrogatories and then answered them "subject to and without waiving" her objections. In response to No. 2, she answered: "When I saw Plaintiffs' vehicle it was parked nose-in facing the empty building at 30403 Kings Valley

4

Drive, in Conifer, Colorado. Plaintiffs' vehicle was on the north side of Kum and Go, closest to Kings Valley Drive, in a spot towards the end of the parking row." [#76-2 at p.3.]

In response to No. 3, she answered:

> Plaintiffs' vehicle was already parked when I contacted them, so I did not stop them or pull them over. I parked my Sheriff's Office vehicle at an angle towards the back passenger-side bumper so that Plaintiffs' vehicle was closer to Kings Valley Drive than my vehicle. I was trying to shine my vehicle's bright lights into Plaintiffs' vehicle. As a result, I was about one and a half car-lengths away from Plaintiffs' vehicle.

[#76-2 at p.4.]

Plaintiffs argue that these responses are incomplete because Plaintiffs are "requesting to know the specific storefront, where Defendants are alleging the stop took place in front of, be identified by its unit number." The Court disagrees. Neither of these interrogatories request identification of a specific store front by unit number or otherwise. Instead, they simply ask Fisher to explain how Plaintiffs' and Fishers' vehicles were positioned during the stop. The Court finds that Fisher's responses to these requests are complete. The Court will not require any additional response from Fisher to these interrogatories.

3. **Interrogatory Nos. 4 and 5**

These interrogatories ask Fisher to:

- No. 4: Please explain what was going through your mind when you decided to stop the Plaintiffs' car, regarding the crime you believe Plaintiffs had committed or were committing.

- No. 5: Please explain if it was something you saw Plaintiffs doing inside the car or was it something you saw them doing outside the car, was it just the car, or all the above, that aroused your suspicions to believe that a crime had been committed or was being committed.

5

Fisher again raised objections but answered the requests "subject to and without waiving" her objections. In response to Interrogatory No. 4, she answered:

> I observed a vehicle (Plaintiffs' vehicle) parked late at night in front of an unoccupied building that had been the location of criminal activity in the past and was in a high crime area for Conifer, Colorado. I considered the contact a voluntary contact and had contacted vehicles there every time I observed them while on shift and was not otherwise engaged in a call. I remember debating about finishing my lunch before contacting the vehicle but decided to contact them as I felt it was part of my job.

[#76-2 at p.4.] In response to Interrogatory No. 5, she answered:

> Please see my response to Interrogatory Number 4, above. As I stated, I observed a vehicle (Plaintiffs' vehicle) parked late at night in front of an unoccupied building that had been the location of criminal activity in the past and was in a high crime area for Conifer, Colorado. Although I noticed the vehicle's brake lights come on, it was dark enough that I was not able to tell whether the vehicle was occupied or if the brake lights had come on because of the use of a remote key fob, how many people might or might not be inside, or their positions in the vehicle, or if it was instead parked and empty, which is why I parked in such a way that I could try to use the bright headlights on my Sheriff's Office vehicle to see into the parked vehicle. Even using my bright headlights, I was not able to determine whether the vehicle was occupied from my Sheriff's Office vehicle. I considered the contact a voluntary contact and had contacted vehicles there every time I observed them while on shift and was not otherwise engaged in a call. It was my practice to contact any vehicle I observed at that location when I was on-duty and not otherwise engaged with another call.

[#76-2 at p.5.]

The Court sees nothing incomplete in these responses. These interrogatories ask Fisher to explain her thought processes and reasons for stopping to investigate Plaintiffs. She provided those explanations. The Court will not require any additional response from Fisher to Interrogatory Nos. 4 and 5.

**4.     Interrogatory No. 14**

This request asks Fisher to: "Please explain how many times you (sic) been dispatched to the vacant building or submitted reports related to criminal activities or crimes being committed at the vacant building, prior to the traffic stop at issue here. Submit any and all documents that support your answer to this question."[3] Fisher responded: "I do not recall whether I had previously been dispatched to or submitted reports regarding contacts at 30430 Kings Valley Drive." Plaintiffs argue that this response is evasive. The Court agrees.

In Defendants' response opposing the Motion, Fisher argues that when you couple her response to Interrogatory No. 14 with her responses to Interrogatory Nos. 4 and 15, she has effectively provided a complete response to No. 14. But Fisher's response to No. 14 <u>does not</u> direct Plaintiffs to any other interrogatory responses that are responsive to No. 14. Instead, her response to No. 14 is a simple, "I do not recall." *See Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 561 (D. Colo. 2014) ("An evasive or incomplete discovery response will be treated as a failure to answer or respond."). Fisher is correct that Fed.

---

[3] Interrogatory No. 14 contains a request for production of documents in addition to the interrogatory request. A document request coupled with an interrogatory is considered a distinct subpart. *See IOSTAR Corp. v. Stuart*, 2008 WL 1924209, at *1 (D. Utah Apr. 25, 2008) (discussing that requests within interrogatories that also ask for identification of witnesses and documents constitute three separate subparts); *see also Banks v. Office of Senate Sergeant–at–Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004) ("[A] demand for information about a certain event and for the documents about it should be counted as two separate interrogatories.") Thus, No. 14 contains two distinct subparts because the document request is treated as a separate interrogatory. The Court notes that Plaintiffs have already served their limit of 30 interrogatories. Therefore, Defendants need not respond to the distinct subpart (document request) in No. 14.

R. Civ. P. 33(d) does not require her to produce business records that assist with ascertaining an interrogatory answer, but Rule 33(d) <u>does</u> provide that if the answer to an interrogatory may be determined by examining business records, then the answering party has two options: (1) she can either specifically identify those records and make them available to the opposing party in lieu of examining those records herself, or (2) she can examine the records herself to ascertain the answer to an interrogatory. *See generally* Fed. R. Civ. P. 33(d). From Fisher's arguments, it appears there are indeed records that exist from which an answer to No. 14 may be ascertained; however, she neither reviewed those records herself to ascertain the answer, nor directed Plaintiffs to the specific records from which they could derive the answer under Rule 33(d).

As a result, the Court will compel Fisher to supplement her response to No. 14 by either reviewing the available records herself to ascertain the answer or specifying and producing the records to Plaintiffs from which they may ascertain the answer, as provided by Rule 33(d).

**5.  Request for Production Nos. 15 and 16**

These requests ask Defendants to produce:

- No. 15: Any and all documents related to Defendant Fisher's Personnel and Internal Affairs files and records.

- No. 16: Any and all documents related to Defendant Johnson's Personnel and Internal Affairs files and records.

Defendants raised objections but responded "subject to and without waiving" their objections. Their response was to direct Plaintiffs to Defendants' respective Internal Affairs ("IA") files produced in response to Request for Production No. 8. These requests

8

(Nos. 15 and 16) were also the subject of a prior discovery dispute where this Court ordered Defendants to supplement their responses to these requests as indicated on the record of those proceedings. [#65.]

Plaintiffs contend that Defendants only supplemented their responses by providing three IA Reports out of a total of 14 that were identified. Defendants explain (and indicate they explained to Plaintiffs previously) that the other 11 reports identified by Plaintiffs are not IA Reports, but rather, are CAD summaries. CAD summaries document locations to which dispatchers send deputies or locations to which deputies air they have responded; they are unrelated to IA Reports, according to Defendants.

The Court has no reason to disbelieve Defendants that CAD summaries differ from IA Reports. And Plaintiffs have made no compelling arguments to the contrary. Indeed, Plaintiffs seem to acknowledge the distinction between these records by arguing (in relation to Interrogatory No. 13) that "CAD/Dispatch records" should exist of Fisher's claimed historic contacts with other vehicles parked at the subject location. [*See* #76 at p.4.] For these reasons, the Court finds that Defendants have completely responded to these requests and will not compel any additional responses.

6. **Request for Production No. 23**

This request asks the Defendants to produce: "Any and all documents that describe the units in detail, that Defendants Fisher and Johnson were assigned on the night in question, to include, but not limited to, maintenance and service records of all the equipment on the vehicles, e.g., in-car camera systems, etc." Defendants objected to this request as "unduly broad, overly burdensome, and seeks information that is not relevant

to any claim or defense." Instead of resting on these well-founded objections, however, Defendants went on to quizzically respond that they would "supplement this response when this information becomes available." As a result, Plaintiffs complain that Defendants have failed to supplement this response as Defendants said they would.

Despite Defendants' confusing response to No. 23, the Court nonetheless sustains their objections. The Court agrees that No. 23 seeks information that is not relevant to any claims and defenses in the case, and therefore, it exceeds the proportional needs of the case. The nature, condition, and service history of the vehicles driven by Defendants to the scene bear no logical relationship to Plaintiffs' Fourth Amendment Unreasonable Seizure Claim, which alleges an unlawful investigative stop.[4] Therefore, despite Defendants' ill-founded representation to Plaintiffs to the contrary, the Court will not compel Defendants to respond to this request.

**7.    Plaintiffs' Request for Additional Written Discovery**

In the Motion, Plaintiffs appear to request leave to serve additional written discovery. [#76 at p.4 (twice describing "[a]dditional information Plaintiffs would like to seek from Defendant Fisher, based on information provided" in her responses to Interrogatory Nos. 2-5).]

The Scheduling Order in this case allowed Plaintiffs to serve a total of 30 interrogatories. [#57 at p.5.] Plaintiffs used their allotment of 30 interrogatories in their first

---

[4] In their Reply, Plaintiffs argue No. 23 is relevant to show whether there were cameras in Defendants' vehicles. But No. 23 does not narrowly ask about cameras. Instead, it broadly asks about "[a]ny and all documents that describe the units in detail . . . to include, but not limited to, maintenance and service records of all the equipment on the vehicles . . . ."

set of interrogatories served on Defendants, serving 18 on Fisher and 12 on Johnson. [#76-1; #76-2.] They also used their full allotment of 25 requests for production. [#57 at p.6; #76-4.]. Thus, allowing Plaintiffs to serve additional written discovery would require a modification to the limits established by the Scheduling Order.

In their discretion, courts may modify a scheduling order when a movant shows good cause for the modification. *See* Fed. R. Civ. P. 16(b)(4). Rather than focusing on bad faith of the movant or prejudice to the opposing party, the "good cause" inquiry focuses on the diligence of the party seeking amendment. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

"[W]hatever may be said for the virtues of discovery and the liberality of the federal rules, . . . there comes at some point a reasonable limit against indiscriminately hurling interrogatories at every conceivable detail and fact which may relate to a case." *Grynberg v. Total, S.A.*, No. 03–cv–01280–WYD–BNB, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186–87 (D.Kan.1997)). "The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know . . . ." *Id.*

First, the Court notes that Plaintiffs seek additional discovery requests "based on information provided" by Fisher in her previous discovery responses. In other words, answers she provided lead Plaintiffs to have more questions based on her answers. The Court already allowed Plaintiffs more than the presumptive number of 25 interrogatories when issuing the Scheduling Order. This was in consideration of Plaintiffs' *pro se* status

11

and Mr. Handy's representation that Plaintiffs were not able to take depositions. The problem for Plaintiffs is that they chose to serve their full allotment of interrogatories and document requests with their first set of written discovery served on Defendants, rather than holding back some of their allotted number for follow up requests. While Plaintiffs are not lawyers, they remain held to the same standard as counsel. *See Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1044 (D. Colo. 2012) ("[*P*]*ro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party."). The discovery rules require "counsel in any given case to exercise professional judgment and determine the priorities of discovery." *Grynberg*, 2006 WL 1186836, at *6. The Court does not find Plaintiffs have established good cause as a result.

Further, one point of "additional information" Plaintiffs seek is "a photo of the location in question, pointing out in the photo, where Plaintiffs are alleged to (sic) been parked and the position of our vehicle and their vehicles." [#76 at p.4.] As discussed above, Fisher has already provided a description of her recollection of how and where the respective vehicles were positioned at the time of her investigative stop. And Plaintiffs attached a photo of the location as Exhibit 3 to the Motion. [#76-3.] As discussed above, Plaintiffs asked Fisher to explain the positioning of the respective vehicles during the investigative stop, and she provided a complete explanation. If Plaintiffs wanted Fisher to provide her explanation in reference to a specific photo, they could have made that request within their allotted number of written discovery requests. The additional

information they now seek is the variety of discovery which seeks to discern "every conceivable detail and fact which may relate to a case," which further demonstrates the lack of good cause supporting a modification of the Scheduling Order. *Id.*

Likewise, the other point of "additional information" Plaintiffs seek is the "CAD/Dispatch Notes, etc. of all [Fisher's] contacts with people at the location in question." The Court does not find good cause for allowing these additional requests because the information sought is not relevant or proportional to the needs of the case. The only remaining claim in this case is Plaintiffs' Fourth Amendment claim for unreasonable seizure. Plaintiffs allege Fisher conducted an unlawful investigative stop. These stops are constitutional if the officer has a reasonable suspicion supported by articulable facts that the detainees are involved in criminal activity, even if the officer lacks the probable cause necessary for an arrest. *See Terry v. Ohio*, 392 U.S. 1, 26-27 (1968); *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). Records of all of Fisher's contacts with other people at the subject location is not relevant or proportional to the claims or defenses in this case regarding the lawfulness of Defendants' detention and investigation of these Plaintiffs. *Grynberg*, 2006 WL 1186836, at *6 ("The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know . . . .").

### C. CONCLUSION

In summary, the Court ORDERS as follows:

1. The Motion [#76] is **GRANTED IN PART**: Defendant Fisher shall supplement her response to Interrogatory No. 14 in accordance with Fed. R. Civ. P. 33(d) by either

(a) ascertaining the answer to No. 14 by her review of the applicable records she mentioned, or, assuming the burden of deriving or ascertaining the answer will be substantially the same for either party, (b) specifying the records (by bates number) that must be reviewed and giving Plaintiffs a reasonable opportunity to examine those records to the extent not already produced. *See* Fed. R. Civ. P. 33(d). Defendant Fisher's supplemental response shall be served on Plaintiffs **no later than November 25, 2020**.

2. The Motion [#76] is **DENIED IN PART**: No additional response is required by Defendants to Interrogatory Nos. 2, 3, 4, and 5, and Requests for Production Nos. 15, 16, and 23.
3. The Motion is **DENIED** to the extent it seeks leave to request the "additional information" discussed above.

DATED: November 14, 2019

BY THE COURT:

_____
S. Kato Crews
U.S. Magistrate Judge