IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-789-RBJ-SKC

WYATT T. HANDY, JR and
ASHLEE M. HANDY,

    Plaintiffs,

v.

TERA L. FISHER and
BRANDON H. JOHNSON,

    Defendants.

## ORDER

This case is before the Court on defendants' motion for summary judgment, ECF No. 80. For the reasons stated below, the motion is granted.

## BACKGROUND

I previously described the facts in this case in my order on Magistrate Judge Crews' recommendation on defendants' motion to dismiss. *See* ECF No. 47. I restate those facts here with some additions.

Pro se Plaintiffs Ms. Ashlee Handy and Mr. Wyatt Handy were driving along Highway 285 to visit a friend in Conifer, Colorado in the early morning of April 14, 2016 when the alleged incident occurred. ECF No. 1 ¶ 8. Three people were in the vehicle: Ms. Handy, who is white, was driving; Mr. Handy, who is black, was the front seat passenger; and an unidentified white female passenger sat in the backseat behind Ms. Handy. *Id.* ¶ 9. At approximately 12:43 a.m. plaintiffs stopped in the parking lot of the 24-hour Kum and Go convenience store in Conifer to

1

reprogram their GPS navigational unit. *Id.* ¶ 10. As plaintiffs pulled into the Kum and Go located off Highway 285, they noticed Deputy Fisher's patrol vehicle parked in the convenience store's parking lot. *Id.* ¶ 12. Mr. Handy alleges that he made eye contact with Deputy Fisher as plaintiffs' vehicle pulled into the Kum and Go parking lot. *Id.* ¶ 13.

Within one minute of parking, plaintiffs allege that Deputy Fisher repositioned her patrol car behind plaintiffs' vehicle and activated her emergency lights. *Id.* ¶ 15. Because plaintiffs' car faced the Kum and Go building, plaintiffs were boxed in and unable to move their car. *Id.* ¶ 16. Apparently, Deputy Fisher radioed for backup because, within "seconds," several additional officers arrived at the convenience store. *Id.* ¶¶ 17–18.

Deputy Johnson was one of those officers. With backup in place and their weapons drawn, Deputy Fisher approached the driver's side of the vehicle, and Deputy Johnson approached the passenger's side. *Id.* ¶¶ 19–20. Deputy Fisher asked Ms. Handy for her license, insurance, and registration. *Id.* ¶ 22. Ms. Handy complied with the request, and then she explained that she pulled over to reprogram her GPS. *Id.* ¶¶ 23–24. Deputy Fisher then asked Mr. Handy for his identification "in a hostile manner." *Id.* ¶¶ 24–25. Mr. Handy initially refused to produce identification, and plaintiffs allege he only complied after defendants inferred that he would be arrested if he did not produce identification. *Id.* ¶¶ 26–28. Defendants did not request identification from the backseat passenger. *Id.* ¶ 31. Defendants claim that when Officer Fisher ran Ms. Handy's identification, it showed she was a protected party under a protection order, and that the order restrained a male individual. ECF No. 80 ¶ 7. Defendants released plaintiffs after they verified that there were no outstanding warrants pending against plaintiffs. ECF No. 1 ¶ 30.

Defendants filed a motion to dismiss which Judge Crews recommended I grant in part and deny in part. ECF No. 31, ECF No. 45. I adopted the recommendation and dismissed all of plaintiffs' claims except the 42 U.S.C. § 1983 claim against defendants in their individual capacities alleging an unlawful seizure under the Fourth Amendment. ECF No. 47. On October 28, 2019 Defendants moved for summary judgment on plaintiffs' remaining claim. ECF No. 80.

## STANDARD OF REVIEW

### A. Motion for Summary Judgment

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### B. Pro se Litigants

When a case involves pro se litigants, courts will review their "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, it is not "the

proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A "broad reading" of a pro se plaintiff's pleadings "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id*. Pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks and citations omitted).

## ANALYSIS

In support of their motion, Defendants argue only that plaintiffs have not shown a Fourth Amendment violation, and therefore defendants are entitled to qualified immunity. ECF No. 80.

Qualified immunity protects government officials acting in their official capacity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When qualified immunity is asserted by an official, a plaintiff must satisfy the burden of showing (1) that the defendant violated a constitutional right (2) that was clearly established at the time of violation. *Pearson v. Callahan*, 555 U.S. 223, 232, (2009). I address each prong of the qualified immunity analysis in turn.

### A. Fourth Amendment Violation

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." Whether a seizure is reasonable under the Fourth Amendment depends on the type of encounter alleged. *See, e.g.*, *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996). "The Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000).

Consensual encounters are not seizures under the Fourth Amendment and need not be supported by suspicion of criminal wrongdoing. *Id.* Arrests, on the other hand, are "characterized by highly intrusive or lengthy search or detention." *United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir. 1984), *cert. denied*, 467 U.S. 1255 (1984). Investigative stops (or *Terry* stops) fall in the middle. *See Terry v. Ohio*, 392 U.S. 1, 26–27 (1968). An investigative stop occurs when an officer stops and briefly detains a person for investigative purposes. *Oliver*, 209 F.3d at 1186. These stops are constitutional if the officer has a reasonable suspicion supported by articulable facts that the detainees are involved in criminal activity, even if the officer lacks the probable cause necessary for an arrest. *Id*.

Defendants argue that no Fourth Amendment violation occurred because the interaction began as a consensual encounter in which the officers did not use force or a show of authority to achieve compliance. ECF No. 80 at 5–6. Once the encounter evolved into a seizure, defendants argue, it was only an investigative stop supported by reasonable suspicion. *Id*. Plaintiffs respond that the initial contact was not a consensual encounter but an investigative stop unsupported by reasonable suspicion. ECF No. 103 at 12. They also argue that defendants did not develop reasonable suspicion justifying an investigative stop at any point during the encounter. *Id*. at 15.

    1. <u>Initial Contact</u>

I first examine whether the initial contact defendants made with plaintiffs constituted a seizure or a consensual encounter. If it was a seizure, I must then consider whether the seizure was reasonable.

        a. <u>Whether the Initial Encounter was a Seizure</u>

"An officer is free to approach people and ask questions without violating the Fourth Amendment. However, the person approached under these circumstances is free to refuse to

answer questions and to end the encounter." *Oliver*, 209 F.3d at 1186. "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). The Tenth Circuit has articulated several factors to consider in making this determination including:

> the location of the encounter, particularly whether the defendant is "in an open public place where he [is] within the view of persons other than law enforcement officers," . . . whether the officers "touch or physically restrain" the defendant; . . . whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically "advised defendant at any time that he had the right to terminate the encounter or refuse consent."

*United States v. Zapata*, 997 F.2d 751, 756–57 (10th Cir. 1993) (quoting *United States v. Ward*, 961 F.2d 1526, 1534 (10th Cir. 1992)) (internal citations omitted). However, this list "is non-exclusive and no one factor is dispositive." *United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005) (quoting *United States v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004) and *United States v. Little*, 18 F.3d 1499, 1504 (10th Cir. 1994)) (internal quotations omitted). Rather, "[t]he focus of the test is on the coercive effect of police conduct, taken as a whole on a reasonable person." *Id.*

Turning to the facts here, the parties agree that the interaction took place in the middle of the night; that defendant Fisher was in a marked car which she pulled behind the plaintiffs' parked vehicle; that she activated her overhead lights; that shortly after, at least one other officer arrived on the scene; and that officers approached the car from either side. ECF Nos. 80 at 2–3; 103 at 1–5. Plaintiffs allege and defendants do not dispute that the officers had their weapons drawn when they approached the vehicle. ECF No. 103 at 5; ECF No. 106 at 3. Plaintiffs allege

6

and defendants do not dispute that Officer Fisher's tone and demeanor was "aggressive." ECF No. 103 at 14. The parties dispute the number of additional officers that were on the scene and how many approached the car. *Id*.

The undisputed facts show that a reasonable person would not have felt free to leave or disregard the officers' requests under these circumstances. Examining the Tenth Circuit's listed factors, though the interaction occurred in a public place, there is no evidence it occurred in view of anyone other than several law enforcement officers. Officer Fisher parked her vehicle directly behind the plaintiffs' vehicle, making it difficult to move their vehicle.[1] At least two uniformed officers approached the car from either side with their weapons displayed. This fact alone could by itself indicate to a reasonable person that they were not free to leave, and it weighs heavily for a finding that the encounter was not voluntary. *See, e.g.*, *United States v. Parra-Garcia*, 1 F. App'x 778, 782 (10th Cir. 2001) (unpublished) (weighing heavily the fact that the officers "never brandished or displayed their weapons" in assessing the encounter) (citing *United States v. Soto*, 988 F.2d 1548, 1558 (10th Cir. 1993)). Officer Fisher's tone and demeanor was aggressive. The officers took both the driver and passengers' identification card, though perhaps for only a short amount of time. The officers did not advise the plaintiffs that they were free to go until after returning their identification cards.

---

[1] Defendants argue that plaintiffs were not physically prevented from leaving by Officer Fisher's vehicle because plaintiffs ultimately left without Officer Fisher moving her vehicle. ECF No. 106 at 9. Plaintiffs claim they had to wait for defendants to move their vehicles before backing out. ECF No. 103 at 7. Regardless, the ability to extricate the vehicle does not cut against the fact that the Handys could have reasonably believed they were not free to leave after Officer Fisher parked behind them, making it difficult to remove their car from the parking space. The relevant inquiry is what a reasonable person would believe under the circumstances, *Florida*, 501 U.S. at 439, and not the intention of the officer, or the physical possibility of extrication. I find that parking as Officer Fisher did is one among several factors that would indicate to a reasonable person that they were not free to leave.

These conclusions show how different this encounter was from those cases in which the Tenth Circuit found an encounter consensual. In *United States v. Zapata* the Tenth Circuit found the encounter consensual largely because it occurred on a public train, in view of dozens of other travelers, with plainclothes officers who did not display their weapons and used a regular tone of voice. 997 F.2d at 757. In *United States v. Parra-Garcia* the Tenth Circuit found the encounter consensual because the plainclothes officer never displayed weapons or made threats, it occurred in public, and the officer returned the identification prior to asking permission to search belongings. 1 F. App'x at 782. Defendants have cited no case law in which a court found an encounter analogous to the case at hand consensual.

Because the undisputed facts show that the interaction constituted a seizure, I must determine whether the seizure complied with the Fourth Amendment.

        b. <u>Whether the Seizure Complied with the Fourth Amendment</u>

An investigative stop complies with the Fourth Amendment when an officer has "reasonable suspicion." *Oliver*, 209 F.3d at 1186. For an officer to have reasonable suspicion to seize an individual, the officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id*. In evaluating whether the officers had reasonable suspicion to detain the plaintiffs, the Court must consider "the totality of the circumstances—the whole picture." *United States v. Sokolow*, 490 U.S. 1, 6 (1989) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

Defendants argue that Officer Fisher developed reasonable suspicion once she discovered the protective order. To reiterate, she did not discover the protective order until after she had parked behind the Handys, activated her lights, and called for backup, and until after the officers

had approached plaintiffs' vehicle with their weapons drawn and asked for identification. ECF No. 80 at 12.

Plaintiffs argue that regardless of whether discovering the protective order conveyed reasonable suspicion, Officer Fisher lacked reasonable suspicion when she first encountered plaintiffs. ECF No. 103 at 12. Defendants do not contest that Officer Fisher lacked reasonable suspicion in the initial encounter.

Defendants do note Officer Fisher encountered plaintiffs late at night in a location known for "significant criminal activity." ECF No. 80 at 12. Though not sufficient in itself, this could make the issue of Officer Fisher's reasonable suspicion a closer question. *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("we have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis.") (quoting *Adams v. Williams*, 407 U.S. 143, 144 (1972)). However, because defendants do not argue that Officer Fisher had reasonable suspicion at the initiation of the encounter, I assume without deciding that she lacked reasonable suspicion.

Because I found the initial encounter constituted a seizure, and because defendants do not argue that Officer Fisher had reasonable suspicion until after the initial encounter, plaintiffs have sufficiently stated a Fourth Amendment violation as to the initial encounter so as to survive a motion for summary judgment.

2. Continuing Encounter

Defendants argue that Officer Fisher developed reasonable suspicion later in the encounter when she discovered "Ms. Handy was the protected party to a protection order and that the restrained party was male." ECF No. 80 at 12. Defendants are correct that consensual encounters, investigative stops, and arrests are "not static and may escalate from one to another."

*United States v. Jones*, 701 F.3d 1300, 1312 (10th Cir. 2012) (quoting *United States v. White*, 584 F.3d 935, 945 (10th Cir. 2009)) (internal quotations omitted). Officer Fisher may have developed reasonable suspicion at a later stage in the interaction.

However, this later development of reasonable suspicion does not retroactively remedy plaintiffs' Fourth Amendment injury. Regardless of whether Officer Fisher developed reasonable suspicion later in the unlawful interaction, the fact that the initial seizure occurred without justification sufficiently articulates a Fourth Amendment injury, thereby meeting the first qualified immunity prong. *See Stoedter v. Gates*, 704 F. App'x 748, 754 (10th Cir. 2017) (unpublished) (rejecting assertion of qualified immunity where defendants argued they developed probable cause after initial unjustified seizure); *see also Lundstrom v. Romero*, 616 F.3d 1108, 1125 (10th Cir. 2010) (explaining that officers must have particularized reasonable suspicion *before* initiating an investigative detention).

Because plaintiffs have met their burden on the first qualified immunity prong, I now consider their allegations that the law in question was clearly established.

### B. Clearly Established Law

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotations omitted). "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Ali v. Duboise*, 763 Fed. Appx. 645, 650 (10th Cir. 2019) (unpublished) (citing *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)) (internal quotations omitted). "[C]learly established law should not be defined at a high level of generality." *White v. Pauly*,

137 S. Ct. 548, 552 (2017) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)) (internal quotations omitted). "Although a plaintiff need not identify a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Ali*, 763 F. App'x at 650 (citing *Mullenix*, 136 S. Ct. at 308) (internal quotations omitted); *see also White*, 137 S. Ct. at 551. Once a defendant raises a qualified immunity defense, the burden is on the plaintiffs to show that they have sufficiently met both prongs. *See Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) ("[B]y asserting the qualified-immunity defense, [defendant] triggered a well-settled twofold burden that [plaintiff] was compelled to shoulder.").

Defendants argue only that they were entitled to qualified immunity because the plaintiffs failed to show a Fourth Amendment violation. *See* ECF No. 80. Plaintiffs have asserted the violation was clearly established but do not provide independent argument on the qualified immunity prongs, perhaps because defendants did not address it in their motion. *See* ECF No. 103 at 12. Because the plaintiffs appear pro se, I construe their brief liberally, *Trackwell*, 472 F.3d at 1243, examining whether they present any case law that suggests the violation was clearly established. Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," and the Handys must following the same rules as other litigants. *Hall*, 935 F.2d at 1110. Here, to meet their burden they must make a sufficient showing on the clearly established prong.

Examining plaintiffs' brief, they have presented no case law in which a court found similar conduct to violate the Fourth Amendment. *See* ECF No. 103. Plaintiffs cite *Florida v. Bostick*, 501 U.S. 429 (1991) in which the Supreme Court declined to decide whether a seizure had occurred. They also cite *United States v. Rogers*, 556 F.3d 1130 (10th Cir. 2009), in which the Tenth Circuit found an encounter consensual. Finally, plaintiffs cite *I.N.S. v. Delgado*, 466

11

U.S. 210 (1984), in which the Supreme Court held that a factory raid did not constitute a seizure. These cases cannot support a finding that the violation in the instant case was clearly established. Therefore, Plaintiffs have not met their burden of showing the law was clearly established.[2]

Because I find that plaintiffs have met not their burden, defendants' motion for summary judgment is granted.

## ORDER

Defendants' Motion for Summary Judgment, ECF No. 80, is GRANTED.

DATED this 28th day of April, 2020.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

---

[2] There is case law that suggests such a violation *may* be clearly established. *See e.g.*, *United States v. Lambert*, 46 F.3d 1064, 1068 (10th Cir. 1995) ("Precedent clearly establishes that when law enforcement officials retain an individual's driver's license in the course of questioning him, that individual, as a general rule, will not reasonably feel free to terminate the encounter."). However, because plaintiffs have the burden of proof on the issue, I do not and cannot resolve the question here.